Consolidated Steel Corporation, Plaintiff, *v.* Pressed Steel Car Company, Defendant.

Supreme Court, New York Special Term, April, 1922.

**Guaranty and suretyship — pleading — guaranty of payment — not necessary to allege inability to collect from principal — difference between guaranty of payment and of collection.**

Guaranties of payment differ from guaranties of collection because the conditions upon which the liability of the respective guarantors is predicated are different. In each the guarantor agrees to protect the creditor from the consequences of the principal's default. In the case of a guaranty of payment the guarantor may be sued immediately upon non-payment by the principal; in that of a guaranty of collection he may not be held until the creditor has unsuccessfully exhausted the ordinary means of collection against the principal. The net result of the difference is a postponement of the date when an action may be instituted against the guarantor.

A writing by which the defendant " hereby guarantees " to the plaintiff " the payment for such business as may be placed with " plaintiff by a certain Cuban corporation, is a guaranty of payment and not of collection, and in an action upon the guaranty the complaint need not allege inability to collect from the principal debtor.

Motion for judgment on the pleadings.

*Chadbourne, Babbitt & Wallace,* for plaintiff.

*Hornblower, Miller & Garrison (Lindley A. Garrison* and *Charles A. Boston,* of counsel), for defendant.

Bijur, J. This is a motion by the defendant for judgment on the pleadings on the ground that the guaranty sued upon is a guaranty of collection and not one of payment, and that the complaint, failing to allege inability to collect from the principle debtor, is defective. Plaintiff's treasurer wrote to defendant's vice-president as follows (the italics being mine):                    *" January* 6, 1920.

" Mr. N. S. Reeder, Vice President,
    " The Pressed Steel Car Company,
        " No. 24 Broad Street, New York, N. Y.:

" Dear Sir.— Our Ass'stant Treasurer, Mr. W. S. Swingle, had up with Mr. Kelly of. the American Steel Company of Cuba the question of guarantee from the Pressed Steel Car Company for such business as may be placed with us by the American Steel Company of Cuba. You will understand that we have been granting the American Steel Company of Cuba ninety days trade acceptance terms for some little time now, and everything has been eminently satisfactory, but the account is a growing one, and one that has practically reached the limit that we can give to any one concern without having either *a guarantee of payment* from a bank or from

such organization as the Pressed Steel Car Company.  Mr. Swingle tells me that Mr. Kelly called you up and that you instructed him to give his verbal guarantee that bills would be paid.  I do not doubt your word, but the Consolidated Steel Corporation Directors would hardly hold the Credit Department as having done its full duty in exacting a verbal agreement of this kind, and I am, therefore, presenting the matter to you for your consideration *and ask if you are willing to let us have such a guarantee as is customary in the premises.*

" Very truly yours

" ——————, *Treasurer."*

Defendant replied:

" No. 24 Broad Street,

" NEW YORK CITY, *Jan.* 16, 1920.

" CONSOLIDATED STEEL CORPORATION

" Attention Mr. MARC M. MICHAEL, Treasurer,

" No. 165 Broadway, New York City:

" DEAR SIR.— We have your letter of January 6th, in regard to the account of the American Steel Company of Cuba, and, as requested therein, this Company *hereby guarantees* to the Consolidated Steel Corporation *the payment for such business as may be placed with it* by the American Steel Company of Cuba.

" Yours  very  truly,

(Signed) N. S. REEDER, *Vice-President."*

Defendant's contention is expressed in its counsel's brief as follows:  " The guaranty of payment of business yet to be placed by the principal debtor with the creditor is a pure guaranty, which imports solely *a secondary liability,* a promise to answer only for the debt of another, and not enforcible by action until the primary obligation of the principal debtor has been judicially ascertained by a judgment against the latter, and the extent of the default has been likewise ascertained by the issue of execution against the principal and its return by the sheriff with a report of the result. In this respect a guaranty of the payment of business to be placed and not yet agreed upon or contracted for is, in its legal incidents, analogous to a guaranty of collection or collectibility or the solvency or financial responsibility, which imports the exhaustion of legal remedies against the primary debtor as a condition precedent to suit against the guarantor (*infra,* p. 31).  Such a guaranty is not that guaranty of payment of a definite, ascertained obligation, certain in  ts terms and maturity, which makes the promise of the guarantor a *primary obligation* and which constitutes it either a suretyship (and not a guaranty), of a promise to pay the guarantor's and not another's debt (likewise not a guaranty, though

the word guarantee be the word of promise used).  *  *  *  In short, although there have arisen two lines of decisions, which by a careless phrasing have been distinguished as those dealing with guaranties of payment and those dealing with guaranties of collection, it will be seen from a careful analysis of the decisions that those involving guaranties of payment and held to entitle the creditor to an immediate right of action against the guarantor were cases where the promise of the guarantor was, at the time it was made, a distinct, definite promise, with then immediately ascertainable terms of time, quantity, amount and limit of obligation. In these cases it was a breach of the definite, distinct, original terms of such promise for the principal debtor to default, so that such default was the breach of the guarantor's own initial promise. *  *  *  The instant case, therefore, we say  *  *  *  must be determined by the application of the fundamental principle in the law of guaranty that a *guarantor* differs from a *surety.*''   From this I understand defendant to claim (1) that there is a *fundamental principle of law* which distinguishes a " guarantor " (meaning a guarantor of collection) from a " surety " (meaning a guarantor of payment); and (2) that a guaranty of the obligation of another person covering business yet to be placed where time, quantity and amount are not definitely fixed in advance should ordinarily be construed as a guaranty of collection.   Whether or not it be the result of a " careless phrasing " in the decisions that has distinguished guaranties of payment from guaranties of collection, the difficulty of accurate definition appears clearly.   It is peculiarly marked in this branch of the law, because  the very notion of one contract as collateral to another is a fairly artificial concept.   It arises also, in part, from the inadaptability of terms of general or imperfect signification to define or sufficiently limit the precise idea sought to be conveyed; and, in part, from the use of expressions which have one connotation when viewed from the standpoint of, say, the application of the Statute of Frauds, and a different one when regarded from another angle.   This phrase is well illustrated in *White* v. *Rintoul*, 108 N. Y. 222, 227, where the court was actually driven to an incursion into the realm of metaphysics.   It must also be kept in mind that the language of an opinion should be interpreted in the light of the facts of the case decided and its import measured by its precise application to the issue immediately under discussion.   Marshall, J., in *Cohens* v. *Virginia*, 6 Wheat. 264, 399; *Colonial City T. Co.* v. *Kingston R. R. Co.*, 154 N. Y. 493, 495; *Crane* v. *Bennett*, 177 id. 106.  Guaranties of payment differ from guaranties of collection because the conditions upon which the liability of the  respective  guarantors is predicated are different.   In

each, however, the guarantor agrees to protect the creditor from the consequences of the principa's default.  In the case of a guaranty of payment the guarantor may be sued immediately upon non-payment by the principal; in that of a guaranty of collection he may not be held until the creditor has unsuccessfu ly exhausted the ordinary means of collection against the principal.  The net result of the difference is a postponement of the date when an action may be instituted against the guarantor.  Of course in the case of a guaranty of collection the creditor can recover from the guarantor only so much of the debt as he has failed to collect from the principal, but even in the case of a guaranty of payment, if the principal pay part of the debt, the guarantor can be held only for the remainder.  *Redfield* v. *Haight*, 27 Conn. 31.  The attempted classification of guaranties has led to much confusion in terminology.  The guarantor of payment is in this country frequently called a surety, while in England the latter term designates indifferently either kind of guarantor (De Colyar).  A guaranty of payment is sometimes called " absolute," presumably because dependent on no condition except the principal's default in payment.  A guaranty of collection is per contra called " conditional " because of the implication that the creditor must make appropriate efforts toward collection from the principal before proceeding against the guarantor.  *Eoberg-Bachman Leaf-Tobacco Co.* v. *Heid*, 62 Fed. Rep. 962.  There are even cases which attempt to distinguish between guaranties as " absolute " and " collateral."  *Beebe* v. *Dudley*, 26 N. H. 249, 252.  In *Reigart* v. *White*, 52 Penn. St. 438, the " contract of suretyship " is spoken of as a *direct* liability to the creditor.  In *Saint* v. *Wheeler & Wilson Mfg. Co.*, 95 Ala. 362, 370, it is said " that when the sponsors for another assume a *primary and direct* liability * * * they are sureties; but when this responsibility is *secondary and collateral* to that of the principal, they are guarantors."  The difference is also spoken of as one between " original " and " strict or col'ateral " guaranties.  *Nading* v. *McGregor*, 121 Ind. 465.  It is apparent, however, that every form of guaranty must·be collateral, because a guaranty is essentially a collateral undertaking.  It is equally evident that a guaranty is always conditional — a guaranty of payment upon the principal's non-payment; a guaranty of collection upon his inability to pay.  Indeed, in *Kramph's Executrix* v. *Hatz's Executor*, 52 Penn. St. 525, 529, the court, after designating the guarantor of collection a " guarantor," and the guarantor of payment a " surety," recognizes the fact that they " *both are accessory* contracts * * *, that of a surety in *some sense conditional*, as that of a guarantor is *strictly so* * * *."  Despite this diversity of terminology there seems

to be little doubt as to the principles to be applied in interpreting a guaranty. Defendant urges that I should take into account the fact that we are dealing with " business men's letters," but that really signifies no more than that the guaranty should be read by the same standard as are other contracts. The rule that the liability of a surety is to be " strictly " and rigidly limited by the scope and meaning of the instrument which he has executed is, if anything, a rule of liability to be applied only after the agreement itself has been interpreted according to the ordinary canons of construction. *Richardson* v. *County of Steuben*, 226 N. Y. 13. I come, then, to the next contention of defendant, that, since the guaranty involved in the instant case relates to " business to be placed " and is not definite as to " time, quantity, amount and limit of obligation," it should be interpreted as a guaranty of collection rather than as one of payment. The argument does not appeal to me as sound. It might be persuasive to argue the unlikelihood that a man would give *any* guaranty in respect of future unlimited obligations of another. Since, however, common experience (including this very case) has shown that assumption to be unfounded, I am unable to understand why a guarantor of future unlimited liabilities may not be as willing to assure payment as collection. Guaranties of future liabilities were at one time the subject of serious controversy in respect of the question of consideration. *White* v. *Woodward*, 5 C. B. 810, 1848. Again the futurity of the obligation was a troublesome factor in determining whether the engagement of the alleged guarantor was collateral — *i. e.*, to answer for the *debt of another* — or not. See *Jones* v. *Cooper*, 1 Cowp. 227; *Mountstephen* v. *Lakeman*, L. R. 5 Q. B. 613; 7 Q. B. 196; *Lakeman* v. *Mountstephen*, L. R. 7 H. L. 17; *Crystal Palace Gas Co.* v. *Smith*, DeColyar's County Court Cases, 38; *Burkmire* v. *Darnell*, 6 Mod. 248, 1705; 1 Salk. 27; 2 Ld. Raym. 1087. This question, however, arose from the requirement of the Statute of Frauds that a guaranty must be in writing and the consequent necessity of determining whether the contract at issue was *collateral to some other person's obligation*. The fact that the engagement concerned goods to be purchased in the future or an unlimited amount of goods was never regarded as having any bearing upon the question whether the guaranty was one of payment or of collection. Upon the further argument with which I have been favored by counsel for both parties it was suggested on behalf of defendant that there might be a marked difference in the nature of the defenses available as matter of law in the respective cases of a guarantor of collection or of payment. I take it from defendant's supplemental brief that this point has been abandoned.

Defendant's counsel now stresses the consideration that (1) the mere time when the guarantor's obligation becomes due — as between the two kinds of guaranty — is an element of advantage to the guarantor of collection which should be given due weight in the process of interpretation, and (2) that as under the law of this state a guarantor may not avail of counterclaims existing against the creditor in favor of the principal debtor, whether arising out of the transaction to which the guaranty is collateral or any other transaction, t is the natural presumption that a contract of guaranty is intended to be a guaranty of collection. He argues that it is reasonable to assume that any guarantor would desire to be favored by the human element in the transaction, namely, that as the creditor must first exhaust his means of collection against the principal the latter would in the natural course of human probab lities endeavor to reduce the amount of recovery against him by every defense and counterclaim available to him. This argument, it will be observed, is not directed toward establishing any fundamental distinction between a guaranty of collection and a guaranty of payment as matter of law, but toward pointing out the practical difference to the guarantor as between the two classes of contract. The difference in respect of mere time of payment which I have already adverted to is self-evident. It is also true that in the course of human experience a guarantor of collection may fairly rely on the interposition by the principal debtor of every element available to him to reduce the amount of his liability, although such reductions could not be pleaded by the guarantor himself. The argument, however, when pursued to its logical conclusion is not so much directed to the instant case as against the entire law of guaranty in this respect. The courts might possibly from the outset have regarded a contract of guaranty as an assurance to the creditor that he would ultimately receive the credit to which he was entitled under the contract guaranteed, but that such ultimate credit should be determined not simply as a result of this single transaction, but as the net result of all the then existing relations between the creditor and debtor. The necessary corollary of such an interpretation would have been to make available to the guarantor not only every *defense* in favor of the principal in the immediate transaction, but all his counterclaims arising out of that transaction and out of all other pending transactions of the principal with the creditor. The actual development of the law has, however, been just the contrary. In this state, as recognized by defendant, the tendency has been to limit the guarantor to matters of strict defense available to the principal. *Gillespie* v. *Torrance*, 25 N. Y. 306; *Newton* v. *Lee*, 139 id. 332.

See, also, the interesting sidelight from the Civil Law ind'cated in *Putnam* v. *Schuyler*, 4 Hun, 166, 170, 171. And such in substance is the general law on that subject as expounded by the cases and the text books. The rule may be harsh as against the guarantor, and it may have led to a tendency in some jur'sdictions, as for example Pennsylvania, to construe guaranties, *where that interpretation is possible*, as guaranties of collection rather than of payment. As I have indicated above, however, the argument is rather a protest against the general trend of the development of the law of guaranty in this respect than a practical rule of construction of the contract in the instant case. My conclusion is that there exists no authority, at least in this jurisdiction, for construing the guaranty under consideration — clear and unequivocal in its terms — as anything other than what the parties have in words expressed it to be, namely, a guaranty of payment. Motion denied, with costs.

Ordered accordingly.